# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

AL-QUAN JACKSON,

          Plaintiff,

     v.

LEROY BACA, et al.,

          Defendants.

Case No. CV 12-10393-JST (JEM)

MEMORANDUM AND ORDER
DISMISSING SECOND AMENDED
COMPLAINT WITH
LEAVE TO AMEND

On December 10, 2012, Al-Quan Jackson ("Plaintiff"), proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").  On February 19, 2013, the Court dismissed the Complaint with leave to amend.  On March 25, 2013, Plaintiff filed a First Amended Complaint ("FAC").  On February 10, 2014, Defendant Samel Aldama filed an Answer to the FAC.  On May 19, 2014, Plaintiff filed a "Motion for Leave to File an Amended Complaint" ("Motion"), and lodged a proposed Second Amended Complaint ("SAC") with the Court.  The Motion sought leave to amend the FAC "to reflect the identity and the actions of the newly named Defendants."  (Motion at 1.)  On August 15, 2014, the Court granted Plaintiff leave to amend the FAC and ordered the SAC filed as of May 19, 2014.

/ / /

**SCREENING STANDARDS**

In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the Complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2).  This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This standard is not a probability requirement, but "it asks

for more than a sheer possibility that a defendant has acted unlawfully." Id.   A complaint
that pleads facts that are merely consistent with liability stops short of the line between
possibility and plausibility.  Id.

In a pro se civil rights case, the complaint must be construed liberally to afford
plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621,
623 (9th Cir. 1988).  Unless it is clear that the deficiencies in a complaint cannot be cured,
pro se litigants are generally entitled to a notice of a complaint's deficiencies and an
opportunity to amend prior to the dismissal of an action.  Lucas v. Dept. of Corrections, 66
F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Karim-Panahi, 839 F.2d at 623.  Only if
it is absolutely clear that the deficiencies cannot be cured by amendment should the
complaint be dismissed without leave to amend.  Id. at 623; see also Cato v. United States,
70 F.3d 1103, 1106 (9th Cir. 1995); McQuillon v. Schwarzenegger, 369 F.3d 1091, 1099
(9th Cir. 2004) (where amendment would be futile, complaint may be dismissed without
leave to amend).

After careful review and consideration of the SAC under the relevant standards and
for the reasons discussed below, the Court finds that the SAC must be **DISMISSED WITH
LEAVE TO AMEND.**

**PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that, on December 11, 2011, between the hours of 8:00 a.m. and
9:00 a.m., while being transferred between modules at the Men's Central Jail, he was
involved in a verbal altercation with deputies.  (SAC at 10-11.)[1]  He alleges that, in an
attempt to "de-escalate the already hostile situation, [he] voluntarily turned and faced the
wall and then proceeded to lay on the ground and placed both of [his] hands behind [his]
head."  (SAC at 11.)  Plaintiff explains that, "once on the ground[, he] was proned out in a
submissive, non-threatening, non-resisting position [when] [several] . . . deputies assaulted

---

[1]  For ease of reference, the Court labels and refers to the pages in the SAC in consecutive
order, i.e., 1-18.

and battered [Plaintiff], used excessive force, [and] conspired to cover up the incident and violate [Plaintiff's] rights[.]" (SAC at 11.)

Specifically, Plaintiff alleges that Samuel Aldama placed Plaintiff's hand behind him and in a handcuff.  Aldama assaulted Plaintiff by keeping Aldama's right knee on Plaintiff's lower back, pinning him down, thus preventing Plaintiff from protecting himself.  Plaintiff further alleges that Deputy Rivera placed his right knee on Plaintiff's left shoulder blade, pinning him down, and grabbed Plaintiff's left wrist with his left hand, thus preventing Plaintiff from protecting himself or rotating his arm in order to place it behind his back to be handcuffed.  Plaintiff states Deputy Rivera purposely did so in order to allege Plaintiff was resisting and sprayed Plaintiff with a chemical agent directly in Plaintiff's eyes, ears, nose, and on his head.  (SAC at 11-12.)  At all times, Deputy De La Torre could see that "there was clearly no way that [Plaintiff] could resist or otherwise offer [his] left hand[,]" and "heard [Plaintiff] offer up [his] hand[,]" yet Deputy De La Torre "disregarded [Plaintiff's] repeated offer[s] [to take his] . . . hands and attempts to comply with the orders given and deliberately tase[re]d [Plaintiff] several times."  (SAC at 11-12.)  Deputy Rodriguez pinned Plaintiff's right leg down and prevented him from protecting himself as he watched and encouraged Deputies Rivera and De La Torre attack Plaintiff.  According to Plaintiff, Deputy Rodriguez could see that Plaintiff was not resisting and was hindered from placing his hand behind him by Deputy Rivera's right knee over Plaintiff's shoulder.  (SAC at 12.)  Deputy Ethridge participated in the assault by pinning Plaintiff's left ankle down with Deputy Ethridge's right foot, preventing Plaintiff from moving his foot or protecting himself as Deputies Rivera and De La Torre attacked Plaintiff.  (SAC at 13.)  Deputy Ethridge was also able to see that Deputy Rivera's right knee and left hand prevented Plaintiff from complying with the Deputies' instructions that he place his left hand behind him.  (SAC at 13.)

According to Plaintiff, Deputies Moorman, Raniag, Valencia, Navarrete, Hinchman, and Sharp failed to intervene to protect Plaintiff from the use of excessive force by Deputies Rivera, De La Torre, Aldama, Rodriguez, and Ethridge.  (SAC at 13-15.)  Plaintiff states that Deputies Hinchman, Raniag, Valencia, and Sharp "watched" and/or "observed" the deputies'

misconduct.  (SAC at 14-15.)  According to Plaintiff, Deputies Moorman, Raniag, and Navarrete saw Plaintiff as he voluntarily turned to face the wall and/or laid on the floor and placed his hands behind his head.  (SAC at 13-14.)  Moreover, Deputy Valencia "had a clear and unobstructed line of sight and could see that[,] with [Plaintiff's] back and each of [his] limbs being pinned and restrained[,] . . . it was virtually impossible for [Plaintiff] to resist authorities or protect himself[.]" (SAC at 14.)  According to Plaintiff, Hinchman held the rank of sergeant at the time of the incident "and had every opportunity to stop and even prevent the attack from happening."  (SAC at 15.)  Instead, she "ordered a deputy to continue to use excessive force when she was clearly aware that no force at all was necessary because [Plaintiff] was subdued and in a restrain[ed] position which inhibited [him] from moving at all."  (SAC at 15.)

        Plaintiff alleges that all the Defendants covered up and/or conspired to cover up the use of excessive force by authoring false reports, failing to report the misconduct, and/or failing to reprimand or discipline the deputies for their misconduct.  (SAC at 11-17.) Plaintiff's false reports and/or cover up claim includes allegations against the following supervisory officials (collectively, "Supervisory Defendants") who were not present at the scene during the incident:

- **Sergeant Zonver**: Plaintiff states that "[s]he investigated the incident and watched available video footage of the incident which clearly showed [Plaintiff] being assaulted maliciously and intentionally by Deputies Rivera, De La Torre, Aldama, Rodriguez, and Ethridge."  (SAC at 15.)  According to Plaintiff, Sergeant Zonver "approv[ed] of the tactics used and disregard[ed] obvious evidence which proved the illegal actions made by [the] deputies[.]"  Moreover, Zonver "coerced all Deputies who wrote a memorandum and told [them] what to say before writing it."  (SAC at 15.)

- **Defendant Stewart**: Plaintiff explains that she was the watch commander on duty at the time of the incident and also interviewed Plaintiff concerning the incident.  Plaintiff informed Stewart of the actions Plaintiff took to avoid conflict

1    with the deputies.  Moreover, Stewart viewed a video recording of the incident

2    from the hallway video camera "and saw that the deputies were in direct

3    violation of [Plaintiff's] rights[.]"  (SAC at 15.)  Yet, Stewart conspired with the

4    other supervisory officials to cover up the incident and justify the use of force

5    against Plaintiff.  (SAC at 15.)

6    •   **Defendant Alvarez**: Plaintiff states that he was "one of the interviewers of the

7        incident" as well as an investigator. According to Plaintiff, Defendant Alvarez

8        "was provided with clear[]cut proof of Deputy misconduct . . . [and] failed to

9        correct the situation and reprimand the Deputies involved[ or] . . . to report [the

10       misconduct]."

11   •   **Sergeant Rojo**: Plaintiff states that Rojo was standing at the entrance of the

12       watch commander's office as Plaintiff awaited there in the hallway to be taken

13       to the disciplinary module.  Plaintiff "pleaded" with Rojo to intervene and watch

14       the recording from the hallway video camera and to stop Plaintiff from going to

15       the disciplinary module because he had not violated any rules.  Plaintiff gave

16       Rojo a detailed account of the events.  Rojo later told Plaintiff he was

17       transferring to another facility.  He explained that "he indeed did see [Plaintiff]

18       l[ie] down on the ground but that he did not know what was said."  Rojo

19       explained that Plaintiff's transfer to another facility "was not [Rojo's] call but

20       that of his supervisors."  According to Plaintiff, Rojo was aware of the deputy

21       misconduct but failed to report or correct it.  (SAC at 16.)

22   •   **Captain Ornelas**: Ornelas told Plaintiff that he viewed the footage from the

23       hallway video camera and personally made the decision to transfer Plaintiff to

24       another facility.  According to Plaintiff, after being made aware of the deputy

25       misconduct, Ornelas conspired with his subordinates to cover up the incident.

26       (SAC at 16.)

27   •   **Captain Fedele**: Plaintiff states this defendant "was made aware of the deputy

28       misconduct and direct violation of [Plaintiff's] rights by his subordinates" and

conspired with them to cover up the blatant and obvious misconduct by failing to correct the situation, report the misconduct, or reprimand the deputy personnel in violation.

- • **Sergeant Kevin Roberts**: Plaintiff states that this defendant conspired with the other defendants to cover up the misconduct "once he was aware of it." (SAC at 17.)

Plaintiff further alleges that the Supervisory Defendants (except Fedele and Rojo) failed to ensure that Plaintiff was provided a disciplinary hearing, notice of a hearing, a statement of what rules were violated, any documentation of the charges, and/or a grievance form.  (SAC at 15-17.)

Finally, Plaintiff states that Sheriff Leroy Baca was the chief policy maker and "created a use of force policy, custom, and method of training which . . . caused [Plaintiff] to be subjected to assault and battery[.]" Moreover, Plaintiff further alleges that "[the] violation of [his] rights were [sic] a direct result of the policy[.]" (SAC at 17.)  Finally, Plaintiff states that "[Baca] was aware that this policy, custom, and training would cause anyone it was used on harm[, and] yet he failed to correct it."  (SAC at 17.)

Plaintiff alleges violations of the Equal Protection Clause, due process, and the Eighth Amendment through the use of excessive force.  (SAC at 10.)  He seeks compensatory and punitive damages.  (SAC at 18.)

## DISCUSSION

### I.   Plaintiff Must Name All Defendants In The Caption.

Plaintiff only names Defendant Baca in the caption of the SAC.  (SAC at 1.)  In the body of the SAC, however, Plaintiff makes allegations regarding numerous individuals not named in the caption, as set forth above.  The individuals or entities named as "defendants" only in the body of the SAC have not been presented properly as parties, and the Court does not recognize them as defendants in this action.  If Plaintiff files an amended complaint, he **must include in the caption the names of each defendant against whom he is asserting a claim**.  See Fed. R. Civ. P. 10(a); Local Rule 11-3.8(d); see also Ferdik v.

1  Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (dismissing action for refusal to comply

2  with court orders to name defendants in the caption).  The Court will not order the United

3  States Marshal to serve the amended complaint on any named defendant not identified in

4  the caption.

5  **II.    The SAC Fails to Comply With Fed. R. Civ. P. 10.**

6          Fed. R. Civ. P. 10(b) requires a party to "state its claims or defenses in numbered

7  paragraphs, each limited as far as practicable to a single set of circumstances. . . .  If doing

8  so would promote clarity, each claim founded on a separate transaction or occurrence . . .

9  must be stated in a separate count[.]"  Fed. R. Civ. P. 10(b).  "Separate counts will be

10  required if necessary to enable the defendant to frame a responsive pleading or to enable

11  the court and the other parties to understand the claims."  Bautista v. Los Angeles County,

12  216 F.3d 837, 840 (9th Cir. 2000) (citation omitted).  "Courts have required separate counts

13  where multiple claims are asserted, where they arise out of separate transactions or

14  occurrences, and where separate statements will facilitate a clear presentation."  Id. at 840-

15  41.  "In such cases, separate counts permit pleadings to serve their intended purpose to

16  frame the issue and provide the basis for informed pretrial proceedings."  Id. at 841.

17  "'Experience teaches that, unless cases are pled clearly and precisely, issues are not

18  joined, discovery is not controlled, the trial court's docket becomes unmanageable, the

19  litigants suffer, and society loses confidence in the court's ability to administer justice.'"  Id.

20  (citations omitted).

21          Here, Plaintiff has not separately set forth his diverse claims – including the

22  supporting facts for each claim – as separate counts, so as to allow the court and

23  Defendants to understand the scope and nature of Plaintiff's allegations.  Accordingly, the

24  SAC is subject to dismissal pursuant to Rule 10 because it improperly mixes allegations

25  apparently related to different claims.  If Plaintiff wishes to filed an amended complaint, he

26  shall set forth each claim as a separate count by clearly numbering and distinguishing from

27  one another every civil rights claim, including the underlying factual allegations for each

28  claim.  Any claim that is not clearly numbered or separated from all other claims and

1   accompanied with the alleged facts supporting that claim will not be addressed as a

2   separate claim for relief.

3   **III.    The SAC Fails To State A Claim Against Defendants Under <u>Monell</u>.**

4           Plaintiff's SAC names all Defendants in their individual and official capacities.  "[A]n

5   official-capacity suit is, in all respects other than name, to be treated as a suit against the

6   entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Moreover, a local governmental

7   entity, such as a County, "may not be sued under § 1983 for an injury inflicted solely by its

8   employees or agents.  Instead, it is when execution of a government's policy or custom,

9   whether made by its lawmakers or by those whose edicts or acts may fairly be said to

10  represent official policy, inflicts the injury that the government as an entity is responsible

11  under § 1983."  <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 694

12  (1978).  Thus, "[i]n order to hold [a local government defendant] liable under § 1983,

13  [Plaintiff] must show (1) that he possessed a constitutional right of which he was deprived;

14  (2) that the [local government entity] had a policy; (3) that the policy amounts to deliberate

15  indifference to [Plaintiff's] constitutional right; and (4) that the policy is the 'moving force

16  behind the constitutional violation.'"  <u>Anderson v. Warner</u>, 451 F.3d 1063, 1070 (9th Cir.

17  2006) (citations and internal quotation marks omitted); <u>Dougherty v. City of Covina</u>, 654

18  F.3d 892, 900 (9th Cir. 2011).   "There also must be a 'direct causal link' between the policy

19  or custom and the injury, and [Plaintiff] must be able to demonstrate that the injury resulted

20  from a 'permanent and well settled practice.'"  <u>Anderson</u>, 451 F.3d at 1070 (citation

21  omitted); <u>Villegas v. Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950, 957 (9th Cir. 2008) (<u>en</u>

22  <u>banc</u>).

23          A local government entity may be held liable for a failure to train its employees only if

24  "the failure to train amounts to deliberate indifference to the rights of persons" impacted by

25  the inaction.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989).  In order to state a claim

26  for failure to train, Plaintiff must allege that "in light of the duties assigned to specific officers

27  or employees the need for more or different training is so obvious, and the inadequacy so

28

1   likely to result in the violation of constitutional rights, that the policymakers of the city can

2   reasonably be said to have been deliberately indifferent to the need." Id. at 390.

3         Here, Plaintiff has failed to identify any policy statements, regulations, officially

4   adopted or promulgated decisions, customs, or practices by which any defendant allegedly

5   inflicted the injuries about which Plaintiff is complaining.  Plaintiff states conclusorily that

6   Defendant Baca "created a use of force policy, custom, and method of training which . . .

7   caused [Plaintiff] to be subjected to assault and battery[,]" that "[the] violation of [Plaintiff's]

8   rights were [sic] a direct result of the policy[,]" and that "[Baca] was aware that this policy,

9   custom, and training would cause anyone it was used on harm[, and] yet he failed to correct

10   it[.]" (SAC at 17.)  Plaintiff alleges no facts to support these broad allegations, however.  The

11   allegations of the SAC are insufficient to state a claim upon which relief may be granted

12   against the Defendants in their official capacity. See Iqbal, 556 U.S. at 678-79 (legal

13   conclusions must be supported by factual allegations); Dougherty, 654 F.3d at 900 (finding

14   that plaintiff's conclusory allegations "lack any factual allegations that would separate them

15   from the 'formulaic recitation of a cause of action's elements' deemed insufficient by

16   Twombly."); Warner v. County of San Diego, 2011 WL 662993, at *3-4 (S.D. Cal. 2011)

17   ("formulaic recitations" of alleged government policy, practice or custom insufficient).

18   **IV.   The SAC Fails to State a Claim Against Sheriff Baca In His Individual Capacity.**

19         Liability under § 1983 arises upon a showing of personal participation by the

20   defendant. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002); Fayle v. Stapley, 607 F.2d

21   858, 862 (9th Cir. 1979).  To state a claim under section 1983, a plaintiff must allege that (1)

22   the defendant acted under color of state law, and (2) the defendant deprived him of rights

23   secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178,

24   1185 (9th Cir. 2006).  A person deprives another of a constitutional right where that person

25   "does an affirmative act, participates in another's affirmative acts, or omits to perform an act

26   which [that person] is legally required to do that causes the deprivation of which complaint is

27   made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "The requisite causal

28   connection can be established not only by some kind of direct, personal participation in the

deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743–44.

Thus, supervisory personnel generally are not liable under § 1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). A supervisory official may be liable under § 1983 only if the official was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Crowley, 734 F.3d at 977; Hansen, 885 F.2d at 646. "[S]upervisors can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." Edgerly v. City and County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010) (internal quotations and citation omitted).

Here, Plaintiff fails to allege any facts that would demonstrate that Sheriff Baca was responsible for the allegedly unconstitutional excessive force used against Plaintiff. There is no indication that Sheriff Baca participated in or directed the excessive force or knew of the constitutional violations and failed to prevent them. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). Plaintiff's conclusory statement that Baca "created a use of force policy, custom, and method of training which . . . caused [Plaintiff] to be subjected to assault and battery[,]" that "[the] violation of [Plaintiff's] rights were [sic] a direct result of the policy[,]" and that "[Baca] was aware that this policy, custom, and training would cause anyone it was used on harm[, and] yet he failed to correct it[,]" (SAC at 17), is wholly conclusory and insufficient. Thus, Plaintiff has failed to state a claim against Baca in his individual capacity.

**V.     Plaintiff's Allegations of Cover Up And/Or Conspiracy To Cover Up Misconduct Fail to State a Claim on Which Relief May be Granted.**

      **A.     False Reports and Cover Up.**

        The falsification of disciplinary reports does not state a standalone constitutional claim.  See, e.g., Lee v. Whitten, 2012 WL 4468420, *4 (E.D. Cal. 2012).  Indeed, there is no constitutional right to a prison administrative appeal or grievance system, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), and a prisoner has no constitutionally guaranteed right not to be falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state constitutional claims."); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.").  In sum, Plaintiff's allegations of false reports and cover up, standing alone, do not state a cognizable constitutional claim.  See, e.g., Higgins v. Medina, 2009 WL 3255268, *3 (E.D. Cal. 2009) (finding not cognizable plaintiff's due process claim arising from the falsification of reports and other documents relating to incident of excessive force because prisoners do not have an independent right, grounded in the Due Process Clause, to an accurate prison record).

      **B.     Conspiracy to Issue False Reports and Cover Up.**

        A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (internal quotation marks and citation omitted), and an "actual deprivation of . . . constitutional rights [that] resulted from the alleged conspiracy." Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (internal quotation marks and citation omitted).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each

1  participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d

2  at 441 (internal quotation marks and citation omitted).

3      Here, Plaintiff has failed to allege any facts to demonstrate a specific agreement

4  between Defendants. Instead, his claim is based on speculation and conclusory allegations.

5  See Ivey, 673 F.2d at 268 ("Vague and conclusory allegations of official participation in civil

6  rights violations are not sufficient. . . ."). It is not enough to state the existence of a

7  conspiracy, without alleging facts. "Threadbare recitals of the elements of a cause of action,

8  supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

9  Moreover, for the reasons discussed above, see supra at § IV.A., the conspiracy claim fails

10  because Plaintiff "does not show that any actual deprivation of his constitutional rights

11  resulted from the alleged conspiracy." Woodrum v. Woodward County, Okla., 866 F.2d

12  1121, 1126 (9th Cir. 1989) (no liability for conspiracy under section 1983 "unless there is an

13  actual deprivation of civil rights").

14  **VI.   Due Process: Disciplinary Proceedings.**

15      Plaintiff further alleges that the Supervisory Defendants (except Fedele and Rojo)

16  failed to ensure that Plaintiff was provided a disciplinary hearing, notice of a hearing, a

17  statement of what rules were violated, documentation of the charges, and/or a grievance

18  form. (Complaint at 15-17.)

19      The Due Process Clause protects individuals against the deprivations of life, liberty,

20  or property without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

21  "[T]hose who seek to invoke its procedural protection must establish that one of these

22  interests is at stake." Id.

23      Although a prisoner charged with a disciplinary violation is entitled to certain due

24  process protections, those protections "adhere only when the disciplinary action implicates a

25  protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant

26  hardship on the inmate in relation to the ordinary incidents of prison life.'" Serrano v.

27  Francis, 345 F.3d 1071, 1077-78 (9th Cir. 2003), cert. denied, 543 U.S. 825 (2004) (quoting

28  Sandin v. Connor, 515 U.S. 472, 484 (1995)). Typically, placement in segregated housing

1    in and of itself does not implicate a protected liberty interest.  Serrano, 345 F.3d at 1078;

2    May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) ("[A]dministrative segregation falls within

3    the terms of confinement ordinarily contemplated by a sentence."); Windham v. Cal. Dep't of

4    Corrs., 385 F.App'x 657, 658 (9th Cir. 2010), cert. denied, 131 S.Ct. 979 (2011)

5    ("[P]risoners generally have no protected liberty interest . . . against placement in

6    administrative segregation.").  Likewise, prisoners generally have no protected liberty

7    interest in being incarcerated at a particular prison.  See Meachum v. Fano, 427 U.S. 215,

8    225-29 (1976).

9            Here, Plaintiff fails to allege that Defendants imposed an "'atypical and significant

10   hardship on [Plaintiff] in relation to the ordinary incidents of prison life.'"  Serrano, 345 F.3d

11   at 1077-78.  Because Plaintiff fails to allege the deprivation of a protected liberty interest, his

12   due process claim fails.

13   **VII.    Equal Protection.**

14           Plaintiff appears to state that Defendants' actions violated the Equal Protection

15   Clause.  (SAC at 10.)  An equal protection violation requires a showing that persons

16   similarly situated were unfairly treated differently.  See City of Cleburne v. Cleburne Living

17   Center, 473 U.S. 432, 439 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  A

18   showing of invidious discriminatory intent is also required.  See Village of Arlington Heights

19   v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265 (1977); Navarro v. Block, 72 F.3d

20   712, 716 (9th Cir. 1996).  Intentional discrimination means that a defendant acted at least in

21   part because of a plaintiff's membership in a protected class. See Barren v. Harrington, 152

22   F.3d 1193, 1194 (9th Cir.), cert. denied, 525 U.S. 1154 (1999); Maynard v. City of San Jose,

23   37 F.3d 1396, 1404 (9th Cir. 1994).  Plaintiff's allegations are insufficient to state an Equal

24   Protection claim.

25   / / /

26   / / /

27

28

**VIII.** **Plaintiff's Allegations Are Sufficient To Assert Excessive Force Claims Against Deputies Aldama, Rivera, De La Torre, Rodriguez, Ethridge, Moorman, Raniag, Valencia, Navarette, Hinchman, and Sharp.**

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, 36 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).  What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citations omitted).  For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, 559 U.S. at 37.

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, 559 U.S. at 37-38.  Necessarily excluded from constitutional recognition is the de minimis use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Id.  In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7.

While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. Hudson, 503 U.S. at 7.  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency. Wilkins, 559 U.S. at 37-38. Thus, it is the use of force rather than the resulting injury which ultimately counts. Id. at 38.

An officer cannot escape liability simply because "'he sits back and does nothing'" to further the excessive force. Kraft v. Laney, 2005 WL 2042310, *5 (E.D. Cal. 2005) ("Inactivity in the face of circumstances in which the reasonable police officer would know that he needed to take steps to avoid the use, or continued use, of excessive force on a

1   detainee will lead to liability.") (citing <u>Lolli v. County of Orange</u>, 351 F.3d 410, 418 (9th Cir.

2   2003)); <u>see Fundiller v. Cooper City</u>, 777 F.2d 1436, 1441-42 (11th Cir.1985) ("It is not

3   necessary that a police officer actually participate in the use of excessive force in order to

4   be held liable under section 1983.  Rather, an officer who is present at the scene and who

5   fails to take reasonable steps to protect the victim of another officer's use of excessive

6   force, can be held liable for his nonfeasance.").  Nor does one have to be a supervisor in

7   order to obtain this type of "'inactivity'" liability.  <u>Kraft</u>, 2005 WL 2042310, *5; <u>Webb v. Hiykel</u>,

8   713 F.2d 405, 408 (8th Cir. 1983) (concluding that an officer has "a duty to prevent the use

9   of . . . force, even if the officers beating [the victim] were [the officer's] superiors").  The

10  Court finds that Plaintiff's allegations are sufficient at the screening stage to state a claim for

11  use of excessive force, in violation of the Eighth Amendment, against Deputies Aldama,

12  Rivera, De La Torre, Rodriguez, Ethridge, Moorman, Raniag, Valencia, Navarette,

13  Hinchman, and Sharp.

14                                    * * * * * * * * *

15          For the reasons set forth herein, the Second Amended Complaint is **DISMISSED**

16  **WITH LEAVE TO AMEND**.

17          If Plaintiff desires to pursue this action, he is **ORDERED** to file a Third Amended

18  Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies

19  discussed above.  Plaintiff may not add additional claims or defendants or amend the claims

20  included in the SAC in any other way without prior leave of court.  See Fed. R. Civ. P. 15(a).

21  Plaintiff must name separately each individual defendant against whom he brings his claims,

22  identify clearly the factual basis for each of his claims and the particular constitutional

23  violation, and articulate the connection between each named defendant and each claim.  If

24  Plaintiff wishes to name any of the Supervisory Defendants[2] in an amended complaint, he

25  must allege facts demonstrating the Supervisory Defendants deprived Plaintiff of rights

26  _____

27          [2] As set forth above, the Supervisory Defendants consist of Sergeant Zonver, Defendant

28  Stewart, Defendant Alvarez, Sergeant Rojo, Captain Ornelas, Captain Fedele, and Sergeant Kevin
    Roberts.

secured by the Constitution.  The allegations as presently stated are insufficient as to the Supervisory Defendants.

If Plaintiff chooses to file a Third Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "Third Amended Complaint"; (3) be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document.  The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

Within thirty (30) days of Service of the Third Amended Complaint, Defendant Samel Aldama shall either notify the Court that he is standing on his original Answer or file an Amended Answer.

**Plaintiff is admonished that, if he fails to file a Third Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and/or failure to comply with a Court order.**

DATED: August 18, 2014                                    */s/ John E. McDermott*
                                                          JOHN E. MCDERMOTT
                                                          UNITED STATES MAGISTRATE JUDGE